# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID FALLS,<br><br>       Plaintiff,<br><br>   v.<br><br>A. ARREDONDO,<br><br>       Defendants. | Case No. 1:19-cv-00441-CDB (PC)<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>(Doc. 51) |

Plaintiff David Falls is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action. The action proceeds on an Eighth Amendment claim of excessive force against Defendant A. Arredondo. (*See* Docs. 1 [complaint], 10 [screening order] & 24 [findings and recommendations to dismiss certain claims and defendants].) The parties have voluntarily consented to the jurisdiction of the magistrate judge. (Doc. 58.)

On August 27, 2021, Defendant Arredondo filed a motion for summary judgment. (Doc. 51.) Plaintiff filed an opposition to the motion on February 24, 2022. (Doc. 65.) Defendant replied on March 10, 2022. (Doc. 66.)

**I.      PLAINTIFF'S ALLEGATIONS**

Plaintiff alleges that on November 13, 2015, at approximately 10:35 a.m., a riot occurred between black inmates on the 3A Facility yard at California State Prison, Corcoran. During the riot, Plaintiff was standing by the gate next to the PIA laundry area. At no point was Plaintiff

involved in the riot. After the two groups of inmates had stopped fighting and had separated, Plaintiff heard a loud bang and, immediately following that, Plaintiff felt a very intense burning sensation in his leg and excruciating pain. Plaintiff looked down at his leg and noticed that he was bleeding profusely. Other inmates were able to get Plaintiff the medical attention that he needed while helping to slow down the bleeding from the gunshot wound.

Plaintiff asserts that Defendant Arredondo used excessive and/or deadly force on Plaintiff when the officer took aim at the center mass of Plaintiff's body and took a shot at Plaintiff with his high-powered mini 14 rifle with a 223 round, which struck Plaintiff in the leg. Plaintiff asserts that Defendant Arredondo shot Plaintiff while acting in his individual and official capacities.[1]

## II. LEGAL STANDARDS

### A. Summary Judgment

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials," or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *Oracle Corp.*, 627 F.3d at 387 (citing *Celotex*, 477 U.S. at 325); *see also* Fed. R. Civ. P. 56(c)(1)(B).

Summary judgment should be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that

---

[1] The claim proceeds against Defendant Arredondo in his individual capacity only consistent with the Court's screening order. (Docs. 10 at 11 & 24.)

2

party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment … is satisfied." *Id.* at 323.

In judging the evidence at the summary judgment stage, the court may not make credibility determinations or weigh conflicting evidence. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (citation omitted). It must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment. *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 942 (9th Cir. 2011) (citation omitted). The court determines only whether there is a genuine issue for trial. *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010) (citation omitted).

### B. Excessive Force

The Eighth Amendment prohibits those who operate our prisons from using "excessive physical force against inmates." *Wilkins v. Gaddy*, 559 U.S. 34 (2010) (per curiam); *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992); *Hoptowit v. Ray*, 682 F.2d 1237, 1246, 1250 (9th Cir. 1982) (prison officials have "a duty to take reasonable steps to protect inmates from physical abuse"); *see also Vaughan v. Ricketts*, 859 F.2d 736, 741 (9th Cir. 1988), cert. denied, 490 U.S. 1012 (1989) ("prison administrators' indifference to brutal behavior by guards toward inmates [is] sufficient to state an Eighth Amendment claim"). As courts have succinctly observed, "[p]ersons are sent to prison as punishment, not for punishment." *Gordon v. Faber*, 800 F. Supp. 797, 800 (N.D. Iowa 1992) (quotation omitted), aff'd, 973 F.2d 686 (8th Cir.1992). "Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citation and quotation omitted).

When a prison official stands accused of using excessive physical force in violation of the cruel and unusual punishment clause of the Eighth Amendment, the question turns on "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically for the purpose of causing harm." *Hudson*, 503 U.S. at 7 (1992) (citing *Whitley v.*

*Albers*, 475 U.S. 312, 320-21 (1986)). In determining whether the use of force was wanton and unnecessary, it is proper to consider factors such as the need for application of force, the relationship between the need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of the forceful response. *Hudson*, 503 U.S. at 7. The extent of a prisoner's injury is also a factor that may suggest whether the use of force could plausibly have been thought necessary in a particular situation. *Id*.

Although the absence of serious injury is relevant to the Eighth Amendment inquiry, it is not determinative. *Hudson,* 503 U.S. at 7. That is, use of excessive physical force against a prisoner may constitute cruel and unusual punishment even though the prisoner does not suffer serious injury. *Id*. at 9.

Although the Eighth Amendment protects against cruel and unusual punishment, this does not mean that federal courts can or should interfere whenever prisoners are inconvenienced or suffer *de minimis* injuries. *Hudson*, 503 U.S. at 6-7 (8th Amendment excludes from constitutional recognition *de minimis* uses of force). The malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether significant injury is evident. *Id.* at 9; *see also Oliver v. Keller*, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force standard examines *de minimis* uses of force, not de minimis injuries)). "Injury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins*, 559 U.S. at 38. However, not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson*, 503 U.S. at 9.

**III.    DEFENDANT'S STATEMENT OF UNDISPUTED FACTS**

Defendant submitted the following undisputed materials facts:

1. During all times relevant to the Complaint, Plaintiff David Falls was an inmate in the custody of the California Department of Corrections and Rehabilitation (CDCR).
2. During all times relevant to the Complaint, Defendant Officer Arredondo was employed by CDCR at California State Prison, Corcoran (CSP-COR).

4

3. On November 13, 2015, Defendant was assigned as the control booth officer in Facility 3A, Building 1.
4. On November 13, 2015, at CSP-COR, a riot involving approximately fifty inmates broke out on the Facility 3A yard.
5. At some point either during or after the riot, Defendant shot Plaintiff in the leg with a Mini-14 rifle.
6. Plaintiff claims that, at the moment that Defendant shot him, the riot had already ended and that Plaintiff was standing still, not assaulting anyone.
7. Plaintiff claims that there was no justification whatsoever for the force that was used against him.
8. Following the incident, Plaintiff was charged with a disciplinary violation, Rules Violation Report Log No. 3A-15-11-077, for attempted homicide of inmate Jacobs.
9. In the Rules Violation Report, it was alleged that, just prior to being shot by Defendant, Plaintiff was attempting to murder inmate Jacobs by stomping and kicking Jacob's head.
10. Plaintiff claims that at no point did he assault or attempt to murder inmate Jacobs.
11. Plaintiff was found guilty of the RVR for attempted homicide, a Division A-1 offense under CDCR regulations, and lost 360 days of good-time credits.
12. Per CDCR regulations, attempted homicide is a "Division A-1" offense, for which no credit restoration is possible.
13. Plaintiff is serving a determinant sentence (i.e., not a "life" sentence), with a specific, quantifiable release date.
14. Plaintiff has not overturned his conviction for RVR Log No. 3A-15-11-077 via a habeas petition or appeal.

(Doc. 51-2.)

//

//

**A. Evidentiary Matters**

Plaintiff has failed to comply with Local Rule 260(b) in opposing Defendant's motion for summary judgment.

This Court's Local Rule 260(b) provides, in pertinent part:

> **Opposition**. Any party opposing a motion for summary judgment or summary adjudication shall reproduce the itemized facts in the Statement of Undisputed Facts and admit those facts that are undisputed and deny those that are disputed, including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon in support of that denial. The opposing party may also file a concise "Statement of Disputed Facts," and the source thereof in the record, of all additional material facts as to which there is a genuine issue precluding summary judgment or adjudication. The opposing party shall be responsible for the filing of all evidentiary documents cited in the opposing papers. See L.R. 133(j).

(*See also* Doc. 51-4 [*Rand* Warning].)

Here, Plaintiff did not reproduce Defendant's itemized facts, nor did Plaintiff admit or deny those facts. (*See* Doc. 65.) Because Plaintiff has not complied with Rule 260(b), the Court deems Plaintiff to have admitted those facts not disputed by his complaint or other submissions. *See, e.g.*, *Beard v. Banks*, 548 U.S. 521, 527 (2006) ("by failing specifically to challenge the facts identified in the defendant's statement of undisputed facts, [plaintiff] is deemed to have admitted the validity of the facts contained in the [defendant's] statement."); *Brito v. Barr*, No. 2:18-cv-00097-KJM-DB, 2020 WL 4003824, at *6 (E.D. Cal. July 15, 2020) (deeming defendant's undisputed facts as admitted after plaintiff failed to comply with Local Rule 260(b)).

**IV.   DISCUSSION**

   **A.  The Parties' Positions**

Defendant argues Plaintiff's excessive force claim is barred by the *Heck* doctrine because success on his excessive force claim "would necessarily imply the invalidity of his RVR, and the corresponding loss of good-time credits, which actually lengthened" Plaintiff's sentence. (Doc. 51-1 at 4.) Defendant cites to the undisputed facts involving (1) Plaintiff's guilt of an RVR for attempted homicide in connection with the incident; (2) Plaintiff's loss of 360 days of good time credits; (3) that credits cannot be restored under CDCR regulations; (4) that the loss of credits lengthened Plaintiff's sentence because Plaintiff is serving a determinate sentence; and (5) that

6

1   Plaintiff's RVR conviction has not been overturned through appeal or habeas corpus proceedings.
2   (*Id*. at 4-5.) Defendant contends this is not a case wherein Plaintiff's excessive force claim "can
3   coexist with his RVR conviction" because it is fundamentally inconsistent with the unlawful
4   behavior for which this suit was brought. (*Id*. at 5.) Defendant argues this is not a case involving
5   the possibility of unlawful behavior by Plaintiff and unlawful behavior by Defendant. Instead,
6   Plaintiff claims he was an innocent bystander, and that Defendant lacked any justification to shoot
7   him. (*Id*. at 6.) In other words, it would be impossible for a factfinder to conclude that Plaintiff
8   was both attempting to murder Inmate Jacobs and an innocent bystander "'who never kicked or
9   stomped inmate Jacobs.'" (*Id*.) Defendant argues either "Plaintiff attempted to murder Jacobs,
10  meaning that the RVR was valid, and Defendant was justified in using force; *or* Plaintiff never
11  touched Jacobs, meaning that the RVR was invalid, and Defendant had no reason to use any
12  force." (*Id*., italics in original)

13       In his opposition, Plaintiff states his "lawsuit is not barred by" *Heck*. (Doc. 65 at 1.)
14  Plaintiff argues Defendant is "a rogue guard who [sic] sole purpose is about keeping the darkside
15  of Corcoran Prison shinning [sic]," that "prison guards in Corcoran State Prison have been getting
16  away with murder by shooting inmates," lying and writing "false reports for each other," and that
17  Defendant "knew Plaintiff was standing still" when he fired. (*Id*. at 1-2.) Plaintiff contends
18  Defendant's argument concerning the application of *Heck* is "fruitless" because the RVR findings
19  "are consistent with the conduct of all prison guards who are in the wrong when exposed." (*Id*. at
20  2.) Plaintiff argues the correctional officers "are corrupt and will always be corrupt," stating they
21  "stage fights" and "killings." (*Id.*) Plaintiff contends Defendant's "excuse for shooting" Plaintiff
22  is "unrealistic" because Jacobs stated Plaintiff did not assault him. (*Id*.) Defendant shot Plaintiff
23  "for no reason." (*Id.*) Plaintiff contends summary judgment should be "denied on its face"
24  because Plaintiff was "unjustifiably shot" while "at a standstill," making it "impossible to be
25  stomping on someone [sic] head." (*Id*. at 2-3.)

26       In reply, Defendant contends Plaintiff's failure to dispute the materials facts is fatal to his
27  claim, that Plaintiff "does not dispute, and instead reinforces, that his disciplinary violation and
28  loss of good-time credits for attempted homicide is fundamentally inconsistent" with his claim.

7

1  (Doc. 66 at 2.) Defendant asserts Plaintiff "concedes he was found guilty of a prison disciplinary
2  violation" for attempted homicide in connection with the incident giving rise to his claim. (*Id.*)
3  Defendant argues Plaintiff does not dispute his excessive force claims is premised on Plaintiff's
4  assertion that Defendant shot him at a time when the riot had ended and Plaintiff was standing
5  still, not assaulting anyone. (*Id.*) But Plaintiff was charged with attempted homicide of Jacobs
6  premised on a finding that, just prior to Plaintiff being shot by Defendant, Plaintiff was
7  attempting to murder Jacobs by stomping and kicking him in the head. (*Id.*) Therefore, Defendant
8  contends, the RVR finding is inconsistent with Plaintiff's claim that there was no justification for
9  Defendant's use of force and is barred by *Heck* and must be dismissed. (*Id.*)

### B. *Heck v. Humphries*

In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." *Id*. at 486–87. "[W]hen a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id*. at 487. In other words, if a criminal conviction, prison disciplinary hearing, or other judgment "arising out of the same facts stands and is fundamentally inconsistent with the unlawful behavior for which the section 1983 damages are sought, the 1983 action must be dismissed." *Smithart v. Towery*, 79 F.3d 951, 952 (9th Cir. 1996).

//

The *Heck* bar applies in the prison disciplinary context if (1) the "defect complained of by [Plaintiff] would, if established, necessarily imply the invalidity of the deprivation of his good-time credits[,]" *Edwards v. Balisok*, 520 U.S. 641, 646 (1997); *Nonnette v. Small*, 316 F.3d 872,

8

875 (9th Cir. 2002), and (2) if the restoration of those credits "necessarily" would "affect the duration of time to be served[.]" *Muhammed v. Close*, 540 U.S. 749, 754 (2004) (per curiam); *see also Nettles v. Grounds*, 830 F.3d 922, 929 n.4 (9th Cir. 2016) (en banc) ("*Heck* applies only to administrative determinations that 'necessarily' have an effect on 'the duration of time to be served'" (citations omitted)); *Ramirez v. Galaza*, 334 F.3d 850, 856 (9th Cir. 2003) ("[T]he applicability of the favorable termination rule turns solely on whether a successful § 1983 action would necessarily render invalid a conviction, sentence, or administrative sanction that affected the length of the prisoner's confinement").

Whether a finding in favor of the inmate on his section 1983 claim will necessarily invalidate the disciplinary conviction is a fact-specific inquiry, and courts have reached different results depending upon the findings underlying the criminal or disciplinary conviction and the facts underlying the section 1983 claim. *See Smith v. City of Hemet*, 394 F.3d 689, 697–98 (9th Cir. 2005) (excessive force claim was not *Heck* barred where the force occurred subsequent to the conduct upon which the conviction for willfully resisting, delaying or obstructing peace office in performance of duties was based); *Cunningham v. Gates*, 312 F.3d 1148, 1153–55 (9th Cir. 2002) (inmate's felony murder conviction *Heck* barred any civil claim that he did not provoke the incident at issue and his excessive force claim).

### C. Analysis

Here, in Plaintiff's version of events, there was no need for Defendant to use any force to maintain or restore discipline because Plaintiff was not involved in the riot; rather, he was on the ground or standing, and did not assault Inmate Jacobs at any time. In Defendant's version of events, Plaintiff and another inmate were assaulting Inmate Jacobs during an altercation between two groups on the yard; the inmate being assaulted was unconscious and unable to defend himself. Therefore, a finding in Plaintiff's favor on his excessive force claim would mean that Defendant used excessive force to maliciously and sadistically cause Plaintiff harm rather than in a good-faith effort to maintain or restore discipline. Plaintiff's disciplinary conviction and his excessive force claim arise from the same incident, and the two versions of events are entirely inconsistent with one another. If Plaintiff prevailed on his claim that Defendant, unprovoked by

Plaintiff and without any justification, used excessive force against him and seriously injured him, his success would necessarily invalidate the result of the disciplinary hearing, which was based on the finding that Plaintiff was assaulting another inmate at the time he was shot. *Cunningham*, 312 F.3d at 1153–55.

Defendant has met his initial burden on summary judgment. The record before the Court indicates Plaintiff was found guilty of attempted homicide[2] in disciplinary proceedings and that Plaintiff lost good time credits affecting the duration of the time to be served as a result. *Heck*, 512 U.S. at 486-87. Further, Defendant has shown that Plaintiff has not successfully challenged the disciplinary findings and that good time credits cannot be restored for the violation of which Plaintiff was found guilty. *Edwards*, 520 U.S. at 646; *Muhammed*, 540 U.S. at 754.

Specifically, following adjudication of the RVR on May 21, 2016, Senior Hearing Officer M. Godina, Correctional Lieutenant, found as follows:

> The CDCR-115 Rules Violation Report authored by Correctional Officer R. Roque, which states: "On Friday, November 13, 2015 at approximately 1035 hours while conducting my duties as 3A Yard Officer #2, I was monitoring morning yard activities when I heard Correctional Sergeant J. Flores announce via Institutional radio that there was a fight on the yard and was requesting a code 2 response. I scanned the yard and observed four (4) unidentified inmates fighting on the east side yard. I immediately responded from the front of 3A medical. As I responded I observed multiple inmates run to the aid of the inmates fighting from opposition directions. I requested a code 3 responsive via institutional ratio to the east side yard of 3A; Sergeant J. Flores also requested a code 3. As I responded all the inmates fighting moved from the pull up bars area in front of housing unit 3A01 towards the middle of the yard. Based on my training and experience I was able to identify that the inmates were STG II Bloods and STG II Crips…. All the inmates rioting started moving towards the work change fence line area away from the chemical agents, as all the rioting inmates moved towards the work change fence line I observed Inmate Falls, AE4979, STG II Blood and another unidentified inmate kicking and stomping the head and upper torso of Inmate Jacobs, J-48666, STG II Crip. Inmate Jacobs was not defending himself as he appeared to be unconscious as he laid on the ground face up with his arms to his side. I heard what sounded like a

---

[2] Rule 3005(d) of Title 15 of the California Code of Regulations provides: (1) Inmates shall not willfully commit or assist another person in the commission of an assault or battery to any person or persons, nor attempt to threaten the use of force or violence upon another person; (2) Inmates shall not, with the intent to cause a riot, willfully engage in conduct that urges a riot, or urges others to commit acts of force or violence at a time and place under circumstances that produce a clear and present danger of acts of force or violence or the burning or destroying of property; (3) Inmates shall not participate in a riot, rout, or unlawful assembly.

> discharge from a Mini 14 rifle; Inmate Falls and the other unidentified inmate stopped their attack of Inmate Jacobs. Inmate Falls limped away from the immediate area and fell next to the other STG II Blood Inmates.

(Doc. 51-3 at 31-32.) The Senior Hearing Officer further noted he "reviewed the photographic evidence which depicted Inmate FALLS actively participating in a fight with a large group of inmates, evidence that corroborates the Reporting Employee's written report." (*Id*. at 32.)

On August 16, 2016, Plaintiff lost 360 days of good time credit following the disciplinary proceedings related to the November 13, 2015 incident. (Doc. 51-3 at 44, 47, 64, 81; UDF 11.)[3] Because attempted homicide is a "Division A-1" offense pursuant to California Department of Corrections and Rehabilitation regulations, credit restoration is not possible. (Doc. 51 at ¶ 12; UDF 12.) Further, Defendant indicates a search reveals Plaintiff did not file a habeas corpus petition or otherwise challenge the disciplinary proceeding. (Doc. 51-3 at 2, ¶ 6; *see also* Doc. 51-3 at 110-111; UDF 14.) Plaintiff does not assert otherwise.

In order for Plaintiff to prevail on his excessive force claim against Defendant Arredondo, Plaintiff would have to prove facts fundamentally inconsistent with the findings in the prison disciplinary proceeding. He has failed to do so.

In his complaint, Plaintiff asserts he was not involved in the riot in any way, had not been fighting or committing any act of violence, and was an "innocent bystander." (Doc. 1 at 3, 6-7.)

At his deposition, Plaintiff testified that he was not participating in a riot nor was he assaulting Inmate Jacobs in any way. (Falls Depo., Doc. 51-3 Ex. A, at 20.) Plaintiff testified he was standing by the gate and "the Sacramento, Bay area guys were standing over there, fighting groups was over there. And they were just basically bagging - - skirmishing, pushing them back towards the gate. And they were bagging up. [¶] So, I stood there. And in the middle of it, they saying, 'Is everybody all right? Get down until this is over.' And then the shots was fired, and I was hit in the leg.'" (*Id*. at 24-25.) He also testified that "after [he] was shot, everyone [on the yard] laid down." (*Id*. at at 24.) Plaintiff testified he "might have been in the middle of it, but not

---

[3] In 2010, Plaintiff was sentenced to a determinate term of 21 years in state prison. (Doc. 51-3 at 43; *see also* Falls Depo., at 12-13 [Plaintiff was sentenced to a determinate term following a conviction or manslaughter].)

11

basically fighting anyone." (*Id.* at 30.) Plaintiff further testified he understood the "supposed" reason Defendant shot him "was because [Plaintiff] was attempting to hurt an inmate." (*Id.* at 40.) However, Plaintiff testified he "wasn't attempting to hurt or stomp on nobody. [He] was just standing there." (*Id*. at 41.) Plaintiff agreed it was his testimony that at the time he was shot he was not participating in a riot or assaulting Inmate Jacobs in any way. (*Id.* at 44.)

In every telling, Plaintiff's version of the events of November 13, 2015 includes Plaintiff's denial of his participation in the riot on the yard and any assault on Inmate Jacobs. Yet Plaintiff's version is inconsistent with the findings of the RVR—that Plaintiff was a participant and did assault inmate Jacobs—and thus would serve to invalidate the RVR should he prevail on his excessive force claim against Defendant Arredondo. *Cunningham*, 312 F.3d at 1153–55; *see also Stanford v. Anaya*, No. 2:19-cv-00497-KJM-DMC-P, 2022 WL 3084250, at *3, (E.D. Cal. Aug. 3, 2022) (plaintiff's argument that he did not batter defendant and defendants actually attacked him foreclosed by *Heck* as success on that argument would necessarily imply the invalidity of the deprivation of plaintiff's good time credits); *Burton v. Chenoweth*, No. 2:14-cv-2331-KJN, 2015 WL 7758476, at *3 (E.D. Cal. Dec. 2, 2015) (claim that defendant used excessive force by pepper spraying plaintiff for no reason would invalidate the plaintiff's disciplinary conviction, which is barred by *Heck* and *Edwards*) (footnote omitted); *Farley v. Virga*, No. 2:11-cv-1830-KJM-KJN, 2013 WL 3992392, at *6 (E.D. Cal. Aug. 1, 2013) (claims barred to the extent they depend on the theory that plaintiff did not lead or participate in a riot when he was found guilty of doing so, because such claims implicate the validity of the prison discipline).

To the extent Plaintiff opposes Defendant's motion, arguing the RVR report is false and based on lies by correctional officers seeking to harm inmates and cover for one another, the argument is also barred by *Heck*. *See Edwards*, 520 U.S. at 646 (holding that § 1983 claim not cognizable because allegations of procedural defects and a biased hearing officer implied the invalidity of the underlying prison disciplinary sanction of loss of good-time credits); *Farley*, 2013 WL 3992392, at *7 ("whether or not plaintiff specifically challenges the RVR findings, plaintiff cannot avoid the *Heck* bar by arguing that he was the victim because the RVR found plaintiff led or participated in the riot on July 21, 2010").

The court's ruling in *Hernandez v. Holman*, 2017 U.S. Dist. LEXIS 94202, *13 (C.D. Cal. June 19, 2017) is instructive. There, the plaintiff alleged he made a rude comment to a correctional officer and that officer physically attacked plaintiff as a result. *Id*., at 14. The plaintiff argued the RVR was false and issued only to cover up the correctional officer's use of excessive force. *Id*. However, the RVR arose from the same factual premise as plaintiff's claim, that any use of force was excessive because the plaintiff was innocent of the rules violation for which he was convicted since he did not commit battery. *Id*. The events alleged in the complaint and the events alleged in the RVR were wholly inconsistent such that a finding in the plaintiff's favor would necessarily imply the invalidity of the RVR conviction. *Id*. The plaintiff's complaint was barred by *Heck*

Like the facts in *Hernandez*, here, the RVR arose from the same factual premise as Plaintiff's claim that Defendant Arredondo used excessive force because Plaintiff was innocent of the charge since he did not at any time assault Inmate Jacobs. And, like *Hernandez*, the events alleged in Plaintiff's complaint are wholly inconsistent with the findings alleged in the RVR following the incident, necessarily implying the invalidity of the RVR conviction and barring Plaintiff's complaint.[4]

The prison disciplinary hearing finding, arising out of the same facts as those alleged in Plaintiff's complaint, is fundamentally inconsistent with the unlawful behavior for which Plaintiff's excessive force damages claim is sought and must be dismissed. Therefore, the Court finds that Plaintiff's Eighth Amendment excessive force claim against Defendant Arredondo is barred by *Heck*, because a favorable termination on the claim would imply the invalidity of his

---

[4] Although the Court does not construe Plaintiff's opposition to assert his section 1983 claim does not necessarily imply invalidity of his disciplinary proceeding guilt because his claim and conviction are two separate temporal occurrences, out of an abundance of caution, the Court notes that the record reveals the conduct that forms the basis of Plaintiff excessive force claim is part of a single act upon which the disciplinary finding relies. *Cunningham*, 312 F.3d at 1154 (*Heck* bars claim where the alleged wrongful conduct that forms the basis of the § 1983 claim is "part of a single act" for which plaintiff was already convicted); *see also Beets v. County of Los Angeles*, 669 F.3d 1098, 1043-1045 (9th Cir. 2012) (not reasonable to separate criminal activity from deputy's use of force as there was overwhelming evidence that deceased's two accomplices were forcefully resisting and assaulting police officers; use of force during the course of that criminal activity successfully brought it to an end). Simply stated, *Heck* would also bar Plaintiff's claim because this case is not one in which the use of force was temporally or spatially distinct from the facts giving rise to the criminal conviction.

disciplinary proceeding, which has not been reversed, expunged, declared invalid or called into question by a federal court's issuance of a writ of habeas corpus. *Heck*, 512 U.S. at 486-87.

## V. CONCLUSION AND ORDER

Based on the findings supporting Plaintiff's disciplinary conviction for attempted homicide, a finding in this action that Defendant used excessive force on Plaintiff on November 13, 2015, would necessarily invalidate the disciplinary conviction which resulted in the credit loss and lengthened Plaintiff's sentence. Plaintiff's excessive force claim therefore is barred.

Accordingly, for the reasons set forth above, **IT IS HEREBY ORDERED** that:

1. Defendant's motion for summary judgment filed August 27, 2021 (Doc. 51) is **GRANTED** on the ground that Plaintiff's excessive force claim is barred by the favorable termination rule;

2. Plaintiff's excessive force claim is DISMISSED, without prejudice; and

3. The Clerk of the Court shall enter judgment against Plaintiff and in favor of Defendant and close this case.

IT IS SO ORDERED.

Dated: **December 5, 2022**

_____
UNITED STATES MAGISTRATE JUDGE

14